### WM. T. THOMPSON CO.

v.

### GENERAL NUTRITION CORP., INC., et al. General Nutrition Corporation and General Nutrition Center, Inc., Appellants.

#### No. 81–1930.

United States Court of Appeals, Third Circuit.

Argued Dec. 14, 1981.

Decided Feb. 8, 1982.

Michael D. Fox, John P. Edgar (argued), Gary L. Goldberg, Vasilis C. Katsafanas, Berkman, Ruslander, Pohl, Lieber & Engel, Pittsburgh, Pa., for appellants, General Nutrition Corp. and General Nutrition Center, Inc.

Les J. Weinstein (argued), Aaron M. Peck, Robert G. Badal, C. Steven McMurry, Scott P. Cooper, McKenna, Conner & Cuneo, Los Angeles, Cal., Roger C. Wiegand,

Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for appellee Wm. T. Thompson Co.

Before ADAMS, GIBBONS and GARTH, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

General Nutrition Corporation (General) appeals from an order of the District Court enforcing a subpoena for a deposition of a third party. Wm. T. Thompson Co. (Thompson), the appellee, moves to dismiss General's appeal. We deny the motion to dismiss the appeal, and we affirm the District Court's order.

I

Thompson and General are parties to two civil actions, consolidated for purposes of discovery, pending in the United States District Court for the Central District of California.[1] On November 21, 1980 Thompson, having served notice provided in Fed.R. Civ.P. 30(b) to take a deposition of Touche Ross and Company in Pittsburgh, Pennsylvania, obtained from the Clerk of the District Court of the Western District of Pennsylvania a subpoena duces tecum directing Touche Ross to appear and produce documents on January 21, 1981. Within the time permitted by Fed.R.Civ.P. 45(d)(1) Touche Ross objected in writing to the subpoena, whereupon Thompson, as that rule provides, moved in the Western District of Pennsylvania for a court order enforcing it.[2]

In response to the motion both Touche Ross and General asserted that the materials for which discovery was sought fell

---

1. *Wm. T. Thompson Co. v. General Nutrition Corp.*, No. 78–3206 (C.D.Cal. filed Aug. 17, 1978); *General Nutrition Corp. v. Wm. T. Thompson Co.*, No. 78–3891 (C.D.Cal. filed Aug. 18, 1978).

2. Rule 45(d)(1) provides in relevant part:

   The person to whom the subpoena is directed may, within 10 days after the service thereof or on or before the time specified in the subpoena for compliance if such time is less than 10 days after service, serve upon the attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials except pursuant to an order of the court from which the subpoena was issued. The party serving the subpoena may, if objection has been made, move upon notice to the deponent for an order at any time before or during the taking of the deposition.

within the protection of the Pennsylvania's statutory accountant-client privilege.[3] The district court rejected this contention and by order of February 18, 1981 directed Touche Ross to comply. A Touche Ross representative appeared at the place designated for the deposition on March 12, 1981, but at General's direction refused to answer any substantive questions or produce any documents. Thompson then renewed its motion to compel discovery, while General filed a cross-motion for a protective order enforcing the Pennsylvania statutory privilege. On May 4, 1981 the district court granted Thompson's motion to enforce, and denied General's motion for a protective order. From the May 4, 1981 order, General on May 15, 1981 filed a notice of appeal.[4] Subsequently, Thompson moved to dismiss the appeal for lack of jurisdiction.

## II

■ We turn first to Thompson's motion to dismiss the appeal. In ruling on that motion, it is important to note that this case does not involve a discovery order directed to a party, and thus does not concern the sanctions for failure to make or cooperate in discovery provided for in Fed.R.Civ.P. 37. Rather, it involves a subpoena to a third party witness, for which the only enforcement mechanism is that provided in Rule 45(d). Moreover, because the deposition in this instance is noticed for a district other than that in which the action is pending, enforcement takes place entirely separate from the underlying action, since Rule 45(d) expressly so provides. Thus there is no way in which any record made in the enforcement proceeding can be reviewed either by the District Court for the Central District of California where the action is pending, or by the Court of Appeals for the Ninth Circuit.

A Rule 45 proceeding to enforce a subpoena against a third party witness in another district might well,. therefore, fall within that category of cases such as *Ellis v. Interstate Commerce Commission*, 237 U.S. 434, 35 S.Ct. 645, 59 L.Ed. 1036 (1915), *Harriman v. Interstate Commerce Commission*, 211 U.S. 407, 29 S.Ct. 115, 53 L.Ed. 253 (1908) and *Interstate Commerce Commission v. Brimson*, 154 U.S. 447, 14 S.Ct. 1125, 38 L.Ed. 1047 (1894), involving judicial enforcement of agency subpoenas. In those situations, the order directing a witness to answer is considered final and reviewable without the necessity for the witness standing in contempt. As the Court explained in *Cobbledick v. United States*, 309 U.S. 323, 330, 60 S.Ct. 540, 543, 84 L.Ed. 783 (1940), a proceeding to enforce a subpoena in a tribunal other than where the main action is pending is likened to "an independent suit in equity in which appeal will lie from an injunction without the necessity of waiting for disobedience." *See Clarke v. Federal Trade Commission*, 128 F.2d 542, 543 (9th Cir. 1942). We need not decide that question in this case, however, for under the governing case law in the Supreme Court and here, even if the Rule 45 enforcement proceeding is not considered an action separate from the main case, it results in an order from which General may take an appeal to protect its Pennsylvania law privilege.

---

3. Pa.Stat.Ann. tit. 63, § 9.11a (Purdon Supp. 1981–82) provides:

Except by permission of the client . . . a certified public accountant . . . shall not be required to, and shall not voluntarily, disclose or divulge information of which he may have become possessed relative to and in connection with any professional services as a certified public accountant . . . . The information derived from or as a result of such professional services shall be deemed confidential and privileged . . . .

4. After the notice of appeal was filed Thompson moved to hold Touche Ross and General in contempt for failure to appear at the renoticed deposition. On July 7, 1981 the district court found them in contempt .and levied a civil contempt coercive fine of $1,000.00 a day. The court also entered a protective order prohibiting disclosure of any of the material obtained from Touche Ross to anyone except counsel for Thompson and their retained consultants, and the deposition went forward subject to its provisions. Because of the protective order General's appeal is not moot. Touche Ross has not appealed either the May 4, 1981 order or the order adjudicating it in contempt.

In *In re Grand Jury (C. Schmidt & Sons )*, 619 F.2d 1022 (3d Cir. 1980), a federal grand jury issued subpoenas to six employees of a corporation. The employee witnesses and the corporation as intervenor moved to quash the subpoenas, and the motions of both were denied. On appeal this court, relying on *Perlman v. United States*, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918), held that although the employees could not appeal prior to being held in contempt, the employer could appeal because it had a property interest. We observed:

> Schmidt's appeal, however, involves different considerations. It was not subpoenaed, and is in the case as an intervenor. The option of resisting compliance and standing in contempt is not available to it, and it is unlikely that a third party, even an employee, would risk a contempt citation in order to provide it with immediate review. Thus, in contrast with the *Alexander-Cobbledick-Ryan* rule on finality, it has been recognized that when a party, other than the one to whom a subpoena has been addressed, moves to quash the subpoena, the denial of his motion disposes of his claim fully and finally. *Perlman v. United States*, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918). *See also Gravel v. United States*, 408 U.S. 606, 608 n.1, 92 S.Ct. 2614, 2618 [n.1], 33 L.Ed.2d 583 (1972); *United States v. Nixon*, 418 U.S. [683] at 691, 94 S.Ct. [3090] at 3099, [41 L.Ed.2d 1039].

619 F.2d at 1024–25. The *Schmidt* opinion holding that one asserting a property right or privilege may as intervenor appeal also relied on other recent opinions in this court interpreting the holdings in *United States v. Nixon* and *Perlman v. United States* in the same manner. *In re Grand Jury Proceedings (FMC)*, 604 F.2d 798, 800–01 (3d Cir. 1979); *United States v. RMI Co. (N.L. Industries)*, 599 F.2d 1183, 1186–87 (3d Cir. 1979). The *Nixon, Perlman, Schmidt, FMC, N.L. Industries* decisions control this case, for General in the Rule 45(d) proceeding in the Western District of Pennsylvania against Touche Ross is situated identically with those intervening parties. General is seeking to invoke a Pennsylvania statutory privilege intended for its benefit, and it could not expect that Touche Ross would stand in contempt and undertake an appeal to vindicate General's interests. Indeed Touche Ross did not appeal, but produced the subpoenaed materials when faced with a coercive contempt order. When a claim of property or privilege is made with respect to a third party subpoena our cases are clear that the party claiming the property right or privilege may appeal.

We hold, therefore, that Thompson's motion to dismiss General's appeal must be denied.

### III

■ We turn, then, to the merits of General's appeal. That appeal raises the contention that the District Court erred in failing to enforce Pennsylvania's statutory certified public accountant's privilege. Our starting point, however, is not Section 9.11a of the Pennsylvania Certified Public Accountant law, but Fed.R.Ev. 501, which provides:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness . . . shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness . . . shall be determined in accordance with State law.

Under this rule, in federal question cases the federal common law of privileges applies. *E.g., Gannet v. First National State Bank of New Jersey*, 546 F.2d 1072 (3d Cir. 1976), *cert. denied*, 431 U.S. 954, 97 S.Ct. 2674, 53 L.Ed.2d 270 (1977). Where state law provides the rule of decision, however, state privilege law will govern. *E.g., Samuelson v. Susen*, 576 F.2d 546 (3d Cir. 1978) (diversity jurisdiction). Under the federal common law there is no confidential ac-

countant-client privilege. *Couch v. United States,* 409 U.S. 322, 335, 93 S.Ct. 611, 619, 34 L.Ed.2d 548 (1973).

In the California litigation Thompson has alleged that various business practices of General are violations of the federal anti-trust laws. It also claims violations of state law, although not specifically, we are informed, of Pennsylvania law. For the anti-trust claims the rule of *Couch v. United States, supra,* suggests the absence of a privilege. What state's law would govern questions of privilege at the trial of the state law claims, were they to be tried alone, is an interesting question of choice of law which General has not addressed. It is at least arguable that Pennsylvania privilege law would not apply. But we need not speculate about the choice of law problem, for in this case the anti-trust and state law claims apparently will be tried together. Obviously applying two separate disclosure rules with respect to different claims tried to the same jury would be unworkable. *See* 2 Weinstein's Evidence § 501[02] at 501–21 (1981); *Memorial Hospital v. Shadur,* 664 F.2d 1058 at 1061 n.3 (7th Cir. 1981); *Perrignon v. Bergen Brunswig Corp.,* 77 F.R.D. 455, 458 (N.D.Cal.1978). One rule or the other must govern. Thus, assuming the Pennsylvania privilege is in fact applicable as a matter of choice of law, we must decide whether it or the rule of *Couch v. United States, supra,* will control.

■ We hold that when there are federal law claims in a case also presenting state law claims, the federal rule favoring admissibility, rather than any state law privilege, is the controlling rule. The question is one of first impression in this court, but our holding is consistent with the legislative history[5] of Rule 501 and the decisions of a number of trial courts.[6] It is also consistent with the general rule in federal practice disfavoring privileges not constitu-

tionally based. *E.g., United States v. Nixon,* 418 U.S. 683 (1974); *American Civil Liberties Union of Mississippi v. Finch,* 638 F.2d 1336, 1344 (5th Cir. 1981). Our holding does not, of course, preclude resort to state law analogies for the development of a federal common law of privileges in instances where the federal rule is unsettled. *See, e.g., Riley v. City of Chester,* 612 F.2d 708 (3d Cir. 1979). In this case, however, the governing federal rule with respect to accountant privilege is settled by *Couch v. United States, supra.*

## IV

We have before us an appealable order. Since there are federal law claims pleaded in the underlying actions the district court did not err in rejecting General's claim of an accountant privilege under Pennsylvania law. The motion to dismiss the appeal will be denied, and the order appealed from will be affirmed.

---

**5.** The Senate Report accompanying Rule 501 states that "[i]t is also intended that the Federal law of privileges should be applied with respect to pendent State law claims when they arise in a Federal question case." S.Rep.No. 93–1277, *reprinted in,* [1974] U.S.Code Cong. & Ad.News 7051, 7059 n.16.

**6.** *See, e.g., Sirmans v. City of South Miami,* 86 F.R.D. 492, 494–95 (S.D.Fla.1980); *FDIC v. Mercantile National Bank of Chicago,* 84 F.R.D. 345, 349 (N.D.Ill.1979); *Robinson v. Magovern,* 83 F.R.D. 79 (W.D.Pa.1979); *Lewis v. Capital Mortgage Investments,* 78 F.R.D. 295, 313 (D.Md.1978); *Perrignon v. Bergen Brunswig Corp.,* 77 F.R.D. 455 (N.D.Cal.1978).