**In re TIPPY TOGS OF MIAMI, INC., Debtor.**

**Bankruptcy No. 98–18555–BKC–RAM.**

United States Bankruptcy Court,
S.D. Florida,
Miami Division.

Aug. 9, 1999.

Thomas M. Messana, Markowitz, Davis, Ringel & Trusty, P.A., Miami, FL, for trustee.

Kenneth B. Robinson, Rice & Robinson, P.A., Miami, FL, for Uzan.

## MEMORANDUM OPINION AND ORDER DENYING TRUSTEE'S MOTION TO COMPEL

ROBERT A. MARK, Bankruptcy Judge.

### I. INTRODUCTION

On April 29, 1999, the Court conducted a hearing on the Trustee's Motion to Compel Production and Responses and for Sanctions ("Trustee's Motion"). At the hearing, the Court heard argument and relevant testimony and invited further briefing on the issue. Having heard argument and testimony and having reviewed the respective parties' supplemental briefs, the Court concludes that the Trustee's Motion shall be denied.

### II. BACKGROUND

The contested matter before the Court involves the applicability of the attorney-client privilege to communications between a corporate officer and an attorney. For the reasons that follow, the Court finds the privilege may be asserted by the individual if, as here, the evidence establishes that the communications were part of a meeting in which the officer was seeking personal, not corporate advice.

The Trustee's Motion seeks to compel the production of attorney's notes and testimony ("Communications") arising from a · meeting on August 6, 1998, involving the following participants: 1) Jacob Uzan ("Uzan"), sole owner and president of debtor Tippy Togs of Miami Inc. ("Tippy Togs" or "Debtor"); 2) Leonard Bloom, Esq. ("Bloom"), an attorney who is presently representing Uzan individually and has previously represented Tippy Togs; and 3) Howard Berlin, Esq. ("Berlin"), an attorney who, at the conclusion of the August 6, 1998 meeting, agreed to represent Tippy Togs. Uzan asserts that these Communications are privileged since they occurred prior to Berlin's retention as counsel for Tippy Togs during a meeting at which Uzan was consulting with Berlin for possible personal representation. Accordingly, Uzan argues that he individually may assert the attorney-client privilege with respect to these Communications.

### III. DISCUSSION

Bankruptcy Rule 9017 provides that the Federal Rules of Evidence apply in cases brought under the Bankruptcy Code. Federal Rule of Evidence 501 provides in relevant part,

> Except as otherwise required ... the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege ... shall be determined in accordance with State law.

This contested matter arises in the bankruptcy case, not in any adversary proceeding involving state law claims or defenses. Therefore, federal law applies to the privilege issue before the Court.

A communication made in confidence between an attorney and a client which seeks or obtains legal advice is protected from disclosure, unless the privilege is waived. *United States v. Landof,* 591 F.2d 36, 38 (9th Cir.1978). This attorney-client privilege extends to both the substance of the attorney's and the client's communication, including, but not limited to papers prepared by the attorney so long as those papers reveal the confidential communication. *Carter v. Donovan,* 62 B.R. 1007, 1012 (Bkrtcy.C.D.Cal.1986), *citing Matter of Fischel,* 557 F.2d 209, 211 (9th Cir.1977).

Uzan has asserted the attorney-client privilege to protect disclosure of the Communications which include Berlin's handwritten notes taken during the August 6 meeting and Berlin's testimony about what was said at the meeting. The Trustee maintains that Berlin's client in the meeting was Tippy Togs, not Uzan. Relying on *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985), the Trustee argues that she may waive Tippy Togs' attorney-client privilege. The Trustee also contends that Uzan cannot attach an individual attorney-client privilege to these Communications. Finally, the trustee urges that these Communications were not made in confidence since a third party, Bloom, was present at the meeting.[1]

Turning first to the Trustee's primary argument, the critical factual question is whether the Communications arose from legal advice involving the Debtor (in which case the Trustee can waive the privilege) or whether the discussions involved personal advice to Mr. Uzan.

The affidavit of Howard Berlin, introduced as his direct testimony at the hearing, states that "neither I nor [my firm] has ever been attorney for Jacob Uzan, individually." At the hearing, however, Berlin acknowledged the following:

— Bloom told him that he had "a client" who Bloom wanted him to meet.

— Bloom did not tell him who he would be representing.

— The meeting included some discussions about Uzan, individually, and there are references in his written notes to Uzan's individual issues.

— The decision to retain Berlin as counsel for Tippy Togs was not made until the conclusion of the meeting.

Bloom testified that prior to the meeting, he had represented Tippy Togs in some discreet matters involving individual creditors. He testified further that as of August 6th, the date of the meeting, he was representing Uzan individually. Finally, he stated that the information he disclosed during the meeting was disclosed with the expectation that the information was subject to a claim of attorney-client privilege by Uzan, individually.

Uzan testified that he had retained Bloom for personal representation. Bloom, in turn, referred Uzan to Berlin for possible individual representation. Uzan concedes that the meeting involved discussions about Tippy Togs. However, Uzan contends that these discussions were necessary in order to fully advise his prospective attorney about his possible individual obligations, responsibilities and exposure as a result of his position with Tippy Togs. Uzan corroborates that he, Bloom and Berlin did not make the decision to retain Berlin on behalf of Tippy Togs until the end of the meeting, once all of the facts were known and separate representation appeared best.

■■■ As noted, the Court must determine whether it is Uzan or Tippy Togs that holds the attorney-client privilege regarding the Communications. The law is clear that it is the client, not the attorney, who holds the privilege and only the client may waive the privilege. *Kevlik v. Goldstein*, 724 F.2d 844, 850 (1st Cir.1984); *In re Grand Jury Proceedings*, 73 F.R.D. 647, 652 (M.D.Fla.1977); and *United*

---

1. The Trustee also argues that the crime fraud exception prohibits the application of the attorney-client privilege in this case. The crime fraud exception has been applied in bankruptcy cases. *See e.g. In re Warner*, 90 B.R. 532 (Bankr.M.D.Fla.1988). However, the Court will not consider the crime fraud exception in this case for two reasons: 1) the Court previously stated at the April 29, 1999 hearing that the Trustee had failed to properly notice this issue with sufficient time for the opposing party and the Court to consider it at the hearing; and 2) there is no evidence in the record to support an investigation into this claim and the Court will not conduct a review of otherwise privileged communications for the sole purpose of engaging in a fishing expedition in the hopes of hooking a fraudulent looking monster.

*States v. Jacobs,* 322 F.Supp. 1299, 1303 (C.D.Cal.1971). Important to this inquiry is the fact that Uzan contacted Bloom for the purpose of obtaining personal representation and then together, at Bloom's suggestion, they sought Berlin for assistance with that individual representation. The fact that Uzan divulged information pertaining to Tippy Togs for the purpose of informing Berlin (and Bloom) of his possible business-related problems did not make Tippy Togs the client. Rather, Uzan was still the client looking for prospective counsel. *See, Carter,* 62 B.R. at 1013, 1014 (holding that a co-trustee's waiver of a corporate debtor's privilege does not affect the corporate owner's personal attorney-client privilege where that individual contacted the attorney for the express purpose of obtaining legal advice regarding his personal predicament as well as his business-related problems).

The Court finds the testimony of the witnesses at the hearing credible and therefore finds that Uzan sought both Bloom and Berlin initially for personal representation. Moreover, the decision to retain Berlin as corporate counsel did not occur until the end of the meeting, after the Communications were made. Therefore, Uzan may assert his attorney-client privilege to prevent disclosure of the Communications and the privilege cannot be waived by the Trustee on behalf of Tippy Togs.

 The Trustee also argues that even if Uzan considered Berlin to be acting as his personal attorney at the meeting, Bloom's presence at the meeting destroys any claim that the communications were made in confidence. The facts do not support the Trustee's argument. The mere presence of a third party at an attorney-client conference will not necessarily destroy the privilege. *Landof,* 591 F.2d at 39, *citing United States v. Kovel,* 296 F.2d 918, 921 (2d Cir.1961); *McCormick on Evidence,* s 91, 188–89 (2d ed.1972); and 8 Wigmore, Evidence s 2301 at 583. Where the third party is acting as an agent of the party claiming the privilege, the privilege may be asserted. *Id.* Furthermore, where that third party is acting as an attorney, the privilege may be asserted. *Id.*

The evidence conclusively established that the third party, Bloom, was acting as an attorney for Uzan at the meeting. In addition, Bloom was also acting as an agent for Uzan in setting up the meeting on behalf of Uzan. In short, Bloom's presence at the meeting did not waive the privilege. Therefore, Uzan's attorney-client privilege is applicable to the Communications and the Trustee may not compel disclosure.

### IV. CONCLUSION

When an individual, who is also the principal of a corporation, seeks personal legal advice, the attorney-client privilege cannot be waived by the corporation (or its bankruptcy trustee) merely because corporate matters are also discussed. This rule holds true even where, as here, the attorney is ultimately retained to represent the corporation. For the foregoing reasons, it is—

**ORDERED** that the Trustee's Motion is denied.